UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JACQUELINE MELNICK, and<br>MELNICK CONSULTING, LLC<br><br>Plaintiffs,<br><br>v.<br><br>1435 CAPITAL MANAGEMENT LLC, and<br>BEN JEN,<br><br>Defendants. | Civil Action No. |

**COMPLAINT AND DEMAND FOR TRIAL BY JURY**

NOW COME the Plaintiffs, Jacqueline Melnick ("Melnick") and Melnick Consulting, LLC ("Melnick Consulting") (hereinafter collectively referred to as "Plaintiffs"), by and through their attorney, establishing claims, as set forth below, against Defendants 1435 Capital Management, LLC ("1435 Capital") and Ben Jen ("Jen") (hereinafter collectively referred to as "Defendants").

**PARTIES**

1. Plaintiff Melnick is an individual with a principal mailing address of 3920 Mystic Valley Parkway, Unit 204E, Medford, Massachusetts 02155.
2. Plaintiff Melnick Consulting is a duly organized limited liability company pursuant to the laws of the Commonwealth of Massachusetts, and which maintains its principal place of business located at 3920 Mystic Valley Parkway, Unit 204E, Medford, Massachusetts 02155.

3. Defendant 1435 Capital is a duly organized company pursuant to the laws of the State of New Jersey, and which maintains its principal place of business located at 23 Orchard Road, Suite 101, Skillman, New Jersey, 08558.

4. Defendant Jen is an individual who upon information and belief lives in New Jersey while being employed by 1435 Company.

**JURISDICTION AND VENUE**

5. Subject matter jurisdiction is proper under 28 U.S.C. § 1331 over Plaintiffs' trademark infringement and false designation claims under 15 U.S.C. §1125(a), because the claims arise under the laws of the United States.

6. Subject matter jurisdiction of this Court is also properly based upon the existence of complete diversity between the parties and an amount in controversy which exceeds $75,000 exclusive of costs and interest pursuant to 28 U.S.C. § 1332.

7. For purposes of diversity jurisdiction, Melnick is a citizen of Massachusetts, domiciled in Massachusetts, and Melnick Consulting is a citizen of Massachusetts because its sole member, Melnick, is a citizen of Massachusetts. 1435 Capital is a citizen of New Jersey and Delaware because its member Ben Jen Holdings SLLC is a citizen of Delaware and its member Benzi Ventures LLC is a citizen of New Jersey. Because Ben Jen is the authorized signatory of 1435 Capital and because his name is included in member Ben Jen Holdings, it is presumed Jen is a citizen of New Jersey, domiciled in New Jersey.

8. Personal jurisdiction over 1435 Capital and Jen is lawful and proper here, as Defendants engaged in tortious conduct which caused injury in Massachusetts. The unauthorized use and false designation of Melnick's name, image, and credentials, and the infringement on Melnick

Consulting's trademark by Defendants were directed at an entity and individuals in Massachusetts and caused damages to Melnick in Massachusetts.

9. Supplemental jurisdiction pursuant to 28 USC § 1367 is lawful and proper here because they are so related to the claims in the action within original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

10. Venue for this action properly lies in this district pursuant to 28 USC § 1391, because a substantial part of the events giving rise to the claims in this action occurred in this District.

## SUMMARY OF CASE

11. Melnick's claims arise from Defendants' unauthorized use of her name, image, and Certified Public Accountant (CPA) credentials by Defendants and her false designation as "Controller" of 1435 Capital, in both 1435 Capital's promotional materials and website, causing Melnick damages.

12. Melnick Consulting's claims arise from Defendants' infringement of Melnick Consulting's name and logo, and its unauthorized use of the same in investor-facing materials and on their website, causing Plaintiff Melnick Consulting to suffer damages as a result.

13. Melnick's claims also arise from 1435 Capital's breach of the parties' agreement for Melnick's controller services, and, in the alternative, from 1435 Capital's retention, without payment, of the benefit of Melnick's name, credentials, and professional reputation, which 1435 Capital used to solicit and secure investor funding for the Garden State Innovation Fund ("Innovation Fund").

## FACTUAL ALLEGATIONS

14. Melnick is a CPA licensed in Massachusetts, specializing in tax structuring and compliance for both U.S. and international business entities.

15. With over 20 years of expertise in the asset management industry, Melnick is recognized as a seasoned tax professional, with fifteen years of service at three of the Big Four accounting firms in Boston and a prominent leadership position as tax partner at a national CPA firm.

16. Melnick is an active member of the American Institute of Certified Public Accountants and the Massachusetts Society of Certified Public Accountants and is well recognized in Massachusetts as a professional in her industry.

17. Melnick is the founder and CEO of Melnick Consulting, a Boston-based tax firm founded in May 2025.

18. Melnick has used her own name, the name to which her CPA license is attached, continuously and exclusively throughout her professional life and in connection with her tax consulting services since she founded Melnick Consulting.

19. Upon information and belief, there is no competing or overlapping use of the name Melnick by any third party in the same field.

20. Melnick made the decision to use her last name in Melnick Consulting's company name itself to signal that the services offered originate from Melnick and reflect her personal standard of work.

21. Melnick Consulting's mark is directly tied to Melnick's CPA credentials and professional history and has become associated in the public mind with her professional expertise in strategic tax consulting services.

22. Through Melnick Consulting, Melnick provides outsourced tax director services, tax consulting, and tax compliance for private equity, venture capital, and hedge fund firms.

23. Melnick has invested substantial time and effort throughout her career to protect her reputation and name and has made substantial investments in Melnick Consulting's website and logo to communicate the depth of her experience and the scope of her services to the public.

24. Upon information and belief, Jen is a full-time investor and self-proclaimed "serial entrepreneur," with involvement in over 18 startups in the capacity of co-founder, founder, executive, and investor.

25. Upon information and belief, Jen is the Founder and Managing Director of Ben Jen Holdings, SLLC ("Ben Jen Holdings").

26. Upon information and belief, 1435 Capital is a part of Ben Jen Holdings' portfolio.

27. Jen is also the Founder and Managing Partner of 1435 Capital, which was organized in New Jersey in 2022.

28. 1435 Capital is a capital management company that invests in early-stage and growth-stage companies, largely those seeking funding from seed round through Series C.

29. On June 26, 2025, Jen contacted Melnick to inquire about a meeting in Boston and to state that he had a question for her.

30. On July 11, 2025, Jen sent Melnick another text message stating that he had forgotten to send Melnick the email with his questions and inquiring about her interest in revisiting tax work for 1435 Capital for 2025.

31. Jen initially asked Melnick to quote on reviewing a high volume of internally prepared Schedule K-1s - ranging from 1,000 to 15,000 K-1s for 1435 Capital. Melnick provided the quote to Jen in a formal proposal and subsequently contacted a recruiting agency to prepare for this high-volume workload.

32. Melnick informed the recruiter that she would know how many staff members were needed as soon as the prospect (1435 Capital) executed the statement of work, and the recruiter followed up with Melnick on this proposal for months.

33. Then, on July 18, 2025, Jen introduced Melnick to the idea of serving as controller for 1435 Capital in relation to the launch of 1435 Capital's Innovation Fund in New Jersey.

34. Upon information and belief, the Innovation Fund is a $25 million early-stage venture capital fund launched in August 2025 by 1435 Capital.

35. During a lunch meeting on August 26, 2025, Jen informed Melnick that he initially attempted to use his internal staff for the controller role on the Innovation Fund, but the proposal was rejected by the state of New Jersey. Following that meeting, on August 27, 2025, Jen told Melnick in a text message that New Jersey requires a licensed third-party CPA to serve as controller for the fund.

36. On September 9, 2025, Melnick sent Jen estimated fees for the year of her controller services, tax compliance, and K-1 review, totaling $120,000.

37. Based on Jen's tax work proposals for 1435 Capital and their ongoing discussions and exchanges of fee proposals, Melnick believed that she and Jen were building a substantial, multi-faceted business relationship.

38. On September 18, 2025, Jen requested that Melnick provide her profile photo to him and sent her a draft biography labeling her as "Controller" for 1435 Capital. Melnick provided her photo that day to Jen.

39. Also on September 18, 2025, Jen sent Melnick 1435 Capital's full investor slide deck, noting that Melnick appeared on slides 6 and 54, marking the first documented unauthorized

placement of her identity in investor materials before their employment contract was executed and in place.

40. On September 29, 2025, Jen emailed Melnick a detailed controller/staff accountant job description, to which she responded with concerns that the responsibilities would exceed 10 hours per week as initially proposed.

41. In response to Melnick's concerns, Jen insisted her duties would not exceed 10 hours.

42. On October 13, 2025, Melnick and Jen held a meeting to discuss shadow carry interest details and review proposed compensation terms.

43. During this meeting, Melnick expressed concerns to Jen about his proposal for her compensation – including shadow carry interest – while she was simultaneously to serve as the fund's Controller, raising issues with her CPA license and the fund's regulatory environment.

44. In response, Jen dismissed Melnick's concerns, representing that he had done this type of controller structure with other CPAs in the past.

45. Later in that October 13, 2025 meeting, Jen showed Melnick rough calculations showing that a shadow carry interest would yield at least $1 million at the fund's 8-year maturity.

46. Jen also informed Melnick at the October 13, 2025 meeting that he had received $5 million in funding from the State of New Jersey for the Innovation Fund.

47. On October 14, 2025, Melnick emailed Jen with a fee proposal for her services, as promised in their meeting the day before, and expressed her anticipation of receiving Jen's proposed offer of her shadow carry interest. In response, Jen stated that Melnick's shadow carry interest would be awarded on a vesting schedule and asked if Melnick had a statement of work.

48. In response, Melnick told Jen that she would prepare a formal statement of work once she received the draft of Jen's shadow carry offer and requested a draft of the details of Jen's offer in writing. Jen responded that he would send the shadow carry offer draft later that week.
49. Upon information and belief, based on the conversation had during the October 13, 2025 meeting, 1435 Capital and/or Jen had received $5 million from the State of New Jersey after submitting the marketing plan for the Innovation Fund, which included the unauthorized use of Melnick's profile, name, picture, credentials, and Melnick Consulting's name and logo.
50. On November 7, 2025, Melnick followed up with Jen via email regarding the controller description and draft of the shadow carry interest details. In this email, Melnick stated, "since my firm's name is already included in the NJ fund materials and submitted to the State, I would like to finalize all terms and the engagement letter with a retroactive date of November 1, 2025."
51. Later that day, Jen texted Melnick, saying he saw her email and would make it a point to finalize their agreement that weekend. In response, Melnick again reminded Jen that Melnick Consulting's trademark was already on the Innovation Fund materials, and she wanted their agreement finalized.
52. On November 11, 2025, Jen sent Melnick a shortened controller description.
53. On November 13, 2025, Melnick emailed Jen asking for a draft copy of the shadow carry interest details and informed him that she was working on the statement of work and planned to share it with Jen within the next two days.
54. In response, on November 13th, Jen emailed Melnick stating that he had the completed draft of the shadow carry interest details somewhere, and that he needed to find it again.

55. On November 21, 2025, Melnick sent her statement of work to Jen, providing that she would be paid $52,000 annually, based on 43.33 hours of work per month, to be paid via monthly invoices.

56. By November 21, 2025, Jen and Melnick had exchanged and discussed the material terms of Melnick's proposed engagement as controller: the parties had agreed on Melnick's job description and responsibilities through Jen's November 11, 2025 controller description; Melnick had submitted her statement of work reflecting her proposed compensation of $52,000 annually, based on 43.33 hours of work per month; and Jen had shown Melnick, at their October 13, 2025 meeting, calculations demonstrating that her shadow carry interest would yield at least $1 million at the fund's eight-year maturity. The only remaining item was a written copy of the shadow carry interest terms, which Jen had repeatedly represented was already drafted and would be sent to Melnick – including his November 13, 2025 email stating that he had the completed draft "somewhere" and needed only to locate it.

57. Melnick repeatedly told Jen that no agreement was finalized until Melnick reviewed the written agreement, fully understood its terms and the terms of the shadow carry interest, and approved the agreement.

58. On November 26, 2025, Melnick followed up with Jen regarding the statement of work and her shadow carry interest details.

59. Jen did not respond to Melnick's November 13th, 21st, and 26th emails.

60. Throughout December 2025, Melnick sent multiple follow-up messages to Jen, requesting the signed agreement, the shadow carry interest details, and confirmation that Jen and 1435 Capital still intended to work with her.

61. Throughout December 2025, Jen repeatedly delayed responses to Melnick.

62. In January 2026, Melnick discovered her name and picture were also used on the 1435 Capital website, and she was listed as the company's Controller.

63. Melnick provided her photo and name in reliance on Jen's repeated assurances that a final agreement was forthcoming. Melnick did not consent to the use of her information in 1435 Capital's materials without that final written agreement.

64. On January 5, 2026, Jen emailed Melnick to follow up regarding an engagement letter that he claimed to have sent to Melnick after Thanksgiving 2025 - which was never sent - and inquired about a catch up meeting that next week.

65. On January 5, 2026, 1435 Capital's Chief Compliance Officer, M. Rebecca Bevich ("Bevich"), emailed Melnick stating that Ben was away and that 1435 Capital was transitioning to a different server platform and that she would work on getting Melnick's documents uploaded into the new server for access, stating that Melnick would receive a link from 1435 Capital later that week with the agreement.

66. Melnick sent follow-up emails on January 9th and 14th, to both Jen and Bevich and did not receive a response from Jen or 1435 Capital.

67. On January 14, 2026, Melnick had a scheduled call with Jen, which Jen never attended.

68. Upon information and belief, in January 2026, 1435 Capital publicly celebrated the launch of its fund and positioned itself as a proud supporter of New Jersey's startup ecosystem – using Melnick's identity to satisfy the state's regulatory requirements and whereby to solicit investments into 1435 Capital.

69. Throughout the month of January 2026, Melnick sent Jen multiple text messages, noting that her bio was on the 1435 Capital website listing her as Controller without her authorization.

70. Melnick also sent multiple emails to Jen and Bevich requesting that the final statement of work and other outstanding documents be circulated.

71. Despite Melnick following up with Jen multiple times thereafter, she never heard from Jen again.

72. Melnick's name, photograph, and credentials remained on 1435 Capital's website as the company's Controller until April 2026. Her professional information was removed shortly after Melnick's Chapter 93A demand letter was sent to 1435 Capital and Jen, yet Melnick never received any response. (See Exhibit 1: Chapter 93A Demand.)

73. Melnick never received a final agreement from Jen or 1435 Capital for her Controller services.

74. Upon information and belief, as of September 18, 2025, Jen and 1435 Capital used Melnick's name, photograph, CPA credentials, and false "Controller" title, along with Melnick Consulting's name and logo, in its investor solicitation and marketing materials for the Innovation Fund. Jen and 1435 Capital benefited from and solicited investments through this unauthorized use, including by falsely representing to prospective investors that Melnick served as 1435 Capital's "Controller."

75. Melnick never received any compensation from Jen or 1435 Capital for the use of her name, image, and CPA credentials on their investor deck and their website.

76. Melnick Consulting never received any compensation from Jen or 1435 Capital for the use of their name and logo on 1435 Capital's website.

77. As a result, Melnick and Melnick Consulting were deprived of the value of their name, image, credentials, and trademarks, exposed to potential liability and suffered damages.

**COUNT I - 15 U.S.C. 1125(a)(1)(A); False Association**

**(Melnick and Melnick Consulting v. 1435 Capital and Jen)**

78. Plaintiffs Melnick and Melnick Consulting repeat and incorporate by reference each and every allegation set forth in the preceding paragraphs of this Complaint as if fully set forth herein.

79. Jen personally solicited Melnick's photograph, biographical information, and professional credentials during the parties' contract negotiations, representing that the materials were needed to finalize her engagement as “Controller.”

80. From on or about September 18, 2025, 1435 Capital used Melnick’s name, photograph, and professional credentials and Melnick Consulting’s name and logo in their investor-facing slide deck and website without the Plaintiffs’ authorization or written consent. This use occurred in interstate commerce, as the materials were published online and targeted potential investors worldwide.

81. 1435 Capital used Melnick’s name, photo, and credentials, and Melnick Consulting’s name and logo, in connection with Melnick’s tax expertise, listing her as “Controller” of the company and signifying to the public that 1435 Capital had retained her as a third-party tax expert - which it has not. This false designation was likely to cause confusion or deception as to Plaintiffs’ affiliation with, or the sponsorship or approval of, 1435 Capital’s investment fund and commercial activities.

82. As a direct and proximate result of Defendants’ unauthorized use of Plaintiffs’ name, image, credentials, photo, and logo, Plaintiffs Melnick and Melnick Consulting have suffered damages.

**COUNT II – 15 U.S.C. 1125(a)(1)(B); False Advertising**

**(Melnick and Melnick Consulting v. 1435 Capital and Jen)**

83. Plaintiffs Melnick and Melnick Consulting repeat and incorporate by reference each and every allegation set forth in the preceding paragraphs of this Complaint as if fully set forth herein.
84. Jen personally solicited Melnick's photograph, biographical information, and professional credentials during the parties' contract negotiations, representing that the materials were needed to finalize her engagement as "Controller."
85. 1435 Capital Management made a false and misleading description of fact in a commercial advertisement about their product because they falsely designated Melnick as the "Controller" of their company, including her photo and professional credentials and the name and logo of Melnick Consulting, on their investor slide deck, which they used to obtain investments.
86. 1435 Capital made a false and misleading description of fact by including Melnick's name, image, and her credentials, and Melnick Consulting's name and logo on their website, designating Melnick as the company's "Controller" in order to bolster their legitimacy and credibility as investors in early-stage startups by signaling to the public that they retained Melnick as their tax expert.
87. The misrepresentation of Melnick as 1435 Capital's "Controller" is material because the role of a third-party tax controller is a material aspect of an investor's decision of whether or not to entrust their funds with a company, and, upon information and belief, the state of New Jersey requires investment companies like 1435 Capital to hire a third-party tax controller before they solicit investments.
88. The misrepresentation of Melnick as 1435 Capital's "Controller" deceives, or has the tendency to deceive, investors into believing that 1435 Capital is a safer, better-controlled

investment – based on the false impression that Melnick is part of its team overseeing fund administration and other accounting functions and controls integral to fund operations.

89. The Defendants misappropriated Plaintiffs' name, image, professional credentials, and logo to their benefit.

90. The Plaintiffs, Melnick and Melnick Consulting, have been injured as a result of the misrepresentation.

**COUNT III - M.G.L. c. 214 Section 3A; Unauthorized Use of Name and Picture**

**(Melnick and Melnick Consulting v. 1435 Capital and Jen)**

91. Plaintiffs Melnick and Melnick Consulting repeat and incorporate by reference each and every allegation set forth in the preceding paragraphs of this Complaint as if fully set forth herein.

92. Jen personally solicited Melnick's photograph, biographical information, and professional credentials during the parties' contract negotiations, representing that the materials were needed to finalize her engagement as Controller of 1435 Capital.

93. 1435 Capital used Melnick's name, picture, and professional credentials, and Melnick Consulting's name and logo on their investor- facing slide deck from on or about September 18, 2025, without Plaintiffs' authorization or written consent.

94. 1435 Capital Management used Melnick's name, picture, and professional credentials, and Melnick Consulting's name and logo on their website for advertising purposes without Plaintiffs' authorization or written consent.

95. 1435 Capital used the Plaintiffs' names and images knowingly and deliberately to exploit their value for advertising and soliciting investment purposes.

96. Melnick informed Jen multiple times of 1435 Capital's unauthorized use of her name and image and the unauthorized use of her company's name and logo on their website and investor slide deck.

97. 1435 Capital did not remove Plaintiffs' name, image, credentials, or logo from their advertisement materials after being put on notice of their unauthorized use.

98. The Plaintiffs, Melnick and Melnick Consulting, suffered damages as a result.

**COUNT IV**

**M.G.L. c. 93A, Section 11; Deceptive Trade Practices**

**(Melnick and Melnick Consulting LLC v. 1435 Capital and Jen)**

99. Plaintiffs Melnick and Melnick Consulting repeat and incorporate by reference each and every allegation set forth in the preceding paragraphs of this Complaint as if fully set forth herein.

100. At all relevant times, Melnick was a person engaged in the trade or business of providing tax consulting services under the name Melnick Consulting, within the meaning of M.G.L. c. 93A Sec. 1(b) and 11.

101. At all relevant times, Jen and 1435 Capital were persons engaged in trade or business within the meaning of M.G.L. c. 93A Sec. 1(b) and 11. Jen is the managing partner of 1435 Capital and managing director of Ben Jen Holdings, a consultancy and investment firm through which he has served as founder, mentor, or investor to more than eighteen startups. Jen personally solicited Melnick's name, photograph, and professional credentials and used them in 1435 Capital's investor-facing slide deck and website to promote the fund to prospective investors. 1435 Capital is a venture capital firm that identifies and invests in early

and growth-stage companies, and it used Melnick's name, photograph, and credentials in its investor-facing slide deck and website to solicit investment for its fund.

102. Defendants committed unfair and deceptive practices, including without limitation: (a) publishing and maintaining on Defendants' website a representation identifying Melnick as the company's "Controller;" (b) using Plaintiffs' name, professional credentials, photo, and logo, in connection with Defendants' fund administration, materials provided to potential investors, and marketing without Plaintiffs' authorization or consent; and (c) thereby falsely representing to investors and the public that Plaintiffs were affiliated with, employed by, and responsible for controlling fund administration and accounting functions on behalf of Defendants.

103. The unfair and deceptive acts occurred primarily and substantially in Massachusetts: Plaintiffs are Massachusetts-based, the accounting services were to be performed from Massachusetts, the statement of work is governed by Massachusetts law, and Plaintiffs' harm was suffered in Massachusetts.

104. Defendants misappropriated Plaintiffs' name, image, and likeness for their own competitive gain, using Plaintiffs' identity and professional credentials to enhance Defendants' perceived credibility and level of institutional control in the eyes of investors and the marketplace, to which they were not entitled.

105. Defendants' conduct was unfair and deceptive because Defendants led Plaintiff Melnick to believe she would be hired by the company, thereby inducing Plaintiff to produce and provide her photograph and bio to Defendant Ben Jen in anticipation of executing a final agreement.

106. Defendants thereafter misappropriated Plaintiffs' name and professional credentials without her authorization, consent, or payment, in order to deceive investors as to Plaintiffs' affiliation with 1435 Capital, to the detriment and harm of Plaintiffs.

107. As a direct and proximate result, the Defendants were unjustly enriched at Plaintiffs' expense.

**COUNT V – Breach of Contract**

**(Melnick v. 1435 Capital)**

108. Plaintiffs Melnick and Melnick Consulting repeat and incorporate by reference each and every allegation set forth in the preceding paragraphs of this Complaint as if fully set forth herein.

109. Melnick and 1435 Capital agreed, through their oral and email exchanges on the essential terms of Melnick's engagement as 1435 Capital's third-party Controller, including her role, responsibilities, hours, shadow carry interest, and compensation.

110. In the alternative, and independent of any express oral or written agreement on those terms, a contract implied in fact was formed between Melnick and 1435 Capital through the parties' conduct and partial performance. 1435 Capital, through Jen, solicited and accepted Melnick's photograph, biographical information, and professional credentials for use in designating her as the company's Controller, and Melnick provided those materials and otherwise performed in reasonable expectation of being compensated for her services, an expectation 1435 Capital knew of, solicited, and induced.

111. 1435 Capital accepted the benefit of Melnick's performance by publishing her name, photograph, CPA credentials, and controller title in its investor slide deck and on its website, and by using that designation to satisfy the state of New Jersey's requirement that companies

like 1435 Capital retain a third-party tax controller before soliciting investments, and upon information and belief, thereby helping to obtain at least $5,000,000 in state funding for the Innovation Fund.

112. Melnick performed, or was ready, willing, and able to perform her obligations under the parties' agreement.

113. 1435 Capital breached the agreement by failing to pay Melnick any of the compensation to which she was entitled, by failing to execute or honor the terms of their agreement, and by using an unknown controller in their company while continuing to use Melnick's name, image, and credentials to satisfy New Jersey's third-party retention requirement.

114. As a direct and proximate result of 1435 Capital's breach, Melnick suffered damages, including the compensation she was owed under the parties' agreement and the value of the shadow carry interest 1435 Capital represented she would receive.

**COUNT VI – Unjust Enrichment**

**(Melnick and Melnick Consulting v. 1435 Capital)**

115. Plaintiffs Melnick and Melnick Consulting repeat and incorporate by reference each and every allegation set forth in the preceding paragraphs of this Complaint as if fully set forth herein.

116. During the relevant time period, 1435 Capital accepted and used Melnick's name, image, and professional credentials and Melnick Consulting's name and logo on its investor deck and website to solicit investments in their company.

117. During the relevant period, Melnick never authorized nor gave written consent for 1435 Capital's use of her information.

118. During the relevant time period, 1435 Capital misrepresented that the contract for the services of Melnick was forthcoming and/or had been sent via email.

119. If 1435 Capital had not intentionally misrepresented that the finalized contract was forthcoming and/or had been sent via email, Melnick would not have sent her photo and biographical information to 1435 Capital.

120. As a result of misrepresentation, 1435 Capital continued to use Melnick and Melnick Consulting's name, image, logo, and professional credentials to solicit investments in their company and, upon information and belief, received and retained investments based on the materials that contained Plaintiffs' information.

121. By virtue of 1435 Capital's conduct, it has been unjustly enriched and is liable to pay such amounts to Melnick and Melnick Consulting.

122. As a direct and proximate result of 1435 Capital's conduct, Melnick and Melnick Consulting have suffered and continue to suffer damages in the amount to be determined at trial.

**COUNT VII - Appropriation of Name or Likeness**

**New Jersey Common Law - Right of Publicity**

**(Melnick and Melnick Consulting LLC v. 1435 Capital and Jen)**

123. Plaintiffs Melnick and Melnick Consulting repeat and incorporate by reference each and every allegation set forth in the preceding paragraphs of this Complaint as if fully set forth herein.

124. Defendants 1435 Capital and Jen used Melnick's name, photograph, and likeness, and Melnick Consulting's name and logo, in their investor slide deck and on their website, to advertise 1435 Capital's services and to solicit and secure investments in their Innovation Fund.

125. Defendants did not have Plaintiffs' consent or authorization for this use.

126. Defendants appropriated Melnick and Melnick Consulting's name, image, and likeness for their own benefit, trading on her professional credentials and reputation and falsely labeling her as Controller of 1435 Capital to bolster the company's legitimacy, signal the fund's security to potential investors, and market the company to future investors.

127. Upon information and belief, Defendants secured $5 million in investments for their fund based on the materials which contained Plaintiffs' name, photo, and professional credentials.

128. Defendants' unauthorized use of Plaintiffs' name, image, likeness, and mark was the direct and proximate cause of Plaintiffs' injuries, damages, and losses.

**<u>COUNT VIII - Fraud</u>**

**(Melnick and Melnick Consulting LLC v. 1435 Capital and Jen)**

129. Plaintiffs Melnick and Melnick Consulting repeat and incorporate by reference each and every allegation set forth in the preceding paragraphs of this Complaint as if fully set forth herein.

130. Defendant Jen, individually and on behalf of Defendant 1435 Capital, made false representations of material fact to Plaintiff Melnick, including but not limited to: (a) Jen's proposal of high-volume K-1 review and controller services for 1435 Capital, made with the false representation that Melnick would be formally engaged on those terms; (b) Jen's August

27, 2025 representation that New Jersey required a licensed third-party CPA to serve as controller of the fund; (c) Jen's November 13, 2025 representation that he had a completed draft of Melnick's shadow carry interest terms – terms he had already shown her would yield at least $1 million at the fund's eight-year maturity – and merely needed to locate it, at a time when every other material term of Melnick's engagement had already been discussed and agreed upon; (d) Jen's January 5, 2026 representation that he had sent Melnick's engagement letter, when in fact he never intended to, and did not, send it; (e) Jen's and 1435 Capital's representations that they intended to be bound by the agreement, which further induced Melnick to anticipate the receipt of the contract and to continue relying on the strength of their business relationship; and (f) 1435 Capital's Chief Compliance Officer Bevich's January 5, 2026 representation that she would upload Melnick's documents within the week, which she did not.

131. These representations concerned material facts, as they directly bore on whether and when Melnick would be formally engaged by the company, and on whether Melnick's continued reliance on these assertions would result in paid employment. Because the parties had already agreed on Melnick's role, compensation, and shadow carry terms by November 21, 2025, Jen's later representations that the remaining documentation existed and was forthcoming were particularly material as they represented the final step needed to formalize the contract.

132. Jen knew or acted with reckless disregard to the fact that these representations were false when made. Jen's true intent, at all relevant times, was to obtain the use of Melnick's name, image, likeness, and professional and firm credentials for use in 1435 Capital's

business purposes without ever finalizing or executing the agreement or compensating Melnick under the terms of the contract.

133. Jen and 1435 Capital made these false representations for the purpose of inducing Melnick to continue negotiating in good faith, to forbear from pursuing other engagements, and to provide her photograph and biographical and professional information to Jen in anticipation of a final agreement that Jen and 1435 Capital never intended to deliver.

134. In reliance on these representations, Melnick came to believe that she and Jen were building a genuine business relationship, reached out to staffing recruiters to help manage the anticipated workload, and shared her name, photograph, biography, and professional and firm credentials with Jen and 1435 Capital.

135. Melnick reasonably and justifiably relied on those false representations and continued to negotiate with Jen and 1435 Capital over a course of weeks and forbore from pursuing other professional opportunities during this period.

136. Instead of engaging a genuine third-party controller as represented, Jen and 1435 Capital, upon information and belief, misappropriated Plaintiffs' name, image, and professional credentials without ever hiring a third-party controller, thereby avoiding the salary and third-party retention obligations that a genuine engagement of Melnick would have required.

137. Melnick and Melnick Consulting never authorized or consented to the use of their name, image, professional credentials, or logo on 1435 Capital's investor deck or website.

138. As a direct and proximate result of Melnick's reasonable reliance on Defendants' false representations, Plaintiffs suffered damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs Jacqueline Melnick and Melnick Consulting, LLC, respectfully request that this Court enter judgment in their favor and against Defendants 1435 Capital Management, LLC, and Ben Jen, jointly and severally, where applicable, and award the following relief:

(a) Damages, including compensatory damages in an amount to be determined at trial, to account, without limitation, for lost compensation, lost opportunity costs, and damage to Plaintiffs' professional reputation and goodwill;

(b) Treble damages and reasonable attorneys' fees and costs pursuant to M.G.L. c. 93A, §11;

(c) Disgorgement of all profits, fees, investments, or other financial benefits Defendants obtained as a result of their unauthorized use of Plaintiffs' name, image, credentials, and mark, including any portion of the Innovation Fund investments attributable to Defendants' representations regarding Melnick's role as Controller;

(d) An order requiring Defendant Jen to identify, in writing and under oath, every investor, regulator, and other third party to whom he represented that Melnick served as 1435 Capital's Controller, and to issue a written retraction and correction of that representation to each such person, with evidence of such disclosure and retraction filed with the Court within a time certain set by the Court;

(e) A permanent injunction enjoining Defendants, their officers, agents, employees, and all persons acting in concert with them, from any further use of Plaintiffs' name, image, likeness, or professional credentials, or of the Melnick Consulting name or logo, without Plaintiffs' express written consent;

(f) Pre-judgment and post-judgment interest, costs of suit, and such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues so triable, pursuant to Fed. R. Civ. P. 38(b).

Respectfully submitted,
For the Plaintiffs,
Jacqueline Melnick and
Melnick Consulting, LLC
By their Attorney,

/s/ Darius Pakrooh

Darius Pakrooh, Esq. (BBO # 691599)
PAKROOH LAW, P.C.
90 Canal Street – Suite 400
Boston, MA 02114
(617) 874-1411
darius@pakroohlaw.com

Date: September 25, 2026